IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Respondent, No. CR S-02-0079 FCD CHS P

vs.

WESLEY F. SINE,

Movant. FINDINGS AND RECOMMENDATIONS

______________________________/

I. BACKGROUND

Movant Wesley F. Sine is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2254. Movant stands convicted of mail fraud and is currently serving a sentence of 70 months in federal prison.

In its opinion affirming the conviction and sentence on direct appeal, the Ninth Circuit Court of Appeals summarized the factual and procedural history of movant's case as follows:

> Wesley Sine, a Utah lawyer, helped run a pyramid scheme that defrauded victims of more than two million dollars. Sine's role in the scheme was to reassure individuals that they were lending money to a legitimate real estate investor and that millions of dollars in legitimate collateral protected them in case of default...

> ... [Sine's co-defendant] Panthaky masterminded a wildly imaginative, bizarrely complex pyramid scheme in the late 1990s and early 2000s: First, he convinced victims that they were lending money to fund various real estate projects conducted by Alpha Funding Group, Inc. ("Alpha"), of which Panthaky was president. In making his pitch, Panthaky represented himself as a wealthy international financier and humanitarian who had led Alpha to great success, and promised potential "lenders" between twenty and one hundred percent interest on short-term loans. Using this persona and promise, Panthaky successfully solicited over five million dollars in loans. "Lenders" would receive a promissory note prepared by Sine as Alpha's lawyer and signed by Panthaky. In fact, the money provided by these "lenders" funded no legitimate projects. Instead, some of the money went to repay earlier "lenders" so that the pyramid scheme could continue, and some ended up in the personal coffers of Panthaky and his cohorts.
>
> To reassure the victims, Panthaky promised them that in case anything went wrong with Alpha's projects, they would be protected by assets held in the Alpha Funding Group Trust ("Alpha Trust"). Sine was the trustee of Alpha Trust. In that capacity, he prepared and signed security letters to victims explaining that he would liquidate the trust if Alpha defaulted on loans. Both Sine and Panthaky stated on numerous occasions, including in the security letters, that the trust held $54 million in Ginnie Mae securities.[1]
>
> Almost always, the "lenders" were not repaid as promised and then experienced increasing difficulty in contacting Panthaky. Even after receiving complaints that the loans were not repaid on time, Sine continued to tell the victims that Alpha was a legitimate investment opportunity and had a track record of successful repayment of loans. When such excuses ran out and a "lender" continued to press for repayment, Sine would then play hardball- by, for example, insisting that the promissory note did not allow the "lender" to demand liquidation of the collateral or by instigating litigation against the "lender."
>
> By 2000, under pressure from a growing number of unpaid victims, Sine purported to attempt as trustee of Alpha Trust to liquidate the collateral, only to find out- for the first time, he maintained- that the forms establishing the trust's ownership of the securities were worthless. That the forms were worthless was quite true: Such forms could only transfer ownership of securities issued in paper format, but the Ginnie Mae securities referenced by Alpha Trust's forms existed only in an electronic format. Moreover, Ginnie Mae had no record that Alpha Trust, Alpha, Sine, Panthaky, or the

[1] Ginnie Mae securities are pools of mortgages aggregated and guaranteed by the federally chartered Government National Mortgage Association ("Ginnie Mae") and resold to investors.

> Delmarva Timber Trust ("Delmarva")- the entity the defendants claimed had transferred the securities to Alpha- ever owned any of the securities referred to in the documents.
>
> The main factual dispute at trial was whether Sine realized from the outset, rather than only after the victims demanded access to the collateral, that the supposed collateral was worthless. Sine testified during trial that he had a good faith belief that the trust legitimately owned the Ginnie Mae securities and made efforts to verify their ownership at the time the trust was established. One such effort, he represented, was a 1992 conversation with Jeffrey Franklin, a Maryland banker whose signature appears on the transfer forms. Sine also told the jury that when he learned in 2000 that the forms could not have transferred the securities, he entered into negotiations with Don Meddles, the current trustee of Delmarva, to obtain ownership of the securities. Sine ultimately filed several lawsuits in Utah, naming Meddles and Delmarva as defendants and supposedly seeking to recover the value of the securities...
>
> ...[T]he government indicted Sine in the Eastern District of California for mail fraud pursuant to 18 U.S.C. § 1341. A superseding indictment was filed in September 2004. That indictment alleged as the mail fraud a series of four letters sent in April and May 1999 between Clarence Trausch, a prospective "lender," and Renata Lee, an individual who was already a "lender" and whom the defendants had induced to seek out additional participants. In February 2005, a jury convicted Sine and his co-defendant Panthaky after one hour of deliberations. The judge sentenced Sine to seventy months in prison, which included an enhancement for lying during his trial testimony, and ordered him to pay $2.29 million in restitution.

*United States v. Sine*, 483 F.3d 990, 992-995 (9th Cir. 2007).

## II. ISSUES PRESENTED

Movant claims that his conviction should be reversed for three reasons. First, he asserts that the trial court lacked jurisdiction to impose judgment because he was never arraigned on the superceding indictment filed by the government. He also claims that four material witnesses have recanted their testimony and that a fifth committed perjury. Finally, movant argues that his conduct as shown by the government's case does not constitute a legally valid basis for a mail fraud conviction. As set forth below, all the claims are without merit and no evidentiary hearing is warranted.

III. APPLICABLE LAW

Section 2255 provides, in part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. An evidentiary hearing will be warranted if the motion sets forth specific facts which, if true, entitle the movant to relief. *See Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997); *see also* 28 U.S.C. §2255(b). Affidavits and other documentary evidence supplementing the record may be considered before determining whether an evidentiary hearing is necessary. *United States v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988)

IV. DISCUSSION

A. Jurisdiction

Movant contends that he was not arraigned on the superceding indictment filed by the government in this case and that he never presented a plea to that indictment. He first presented this claim on direct appeal to the Ninth Circuit Court of Appeals. In rejecting the claim, the Ninth Circuit wrote in an unpublished opinion:

> This procedural lapse is not reversible error. "Vacating convictions for lack of formal arraignment proceedings is predicated on the existence of possible prejudice. What is necessary is that defendant know what he is accused of and be able adequately to defend himself." *United States v. Romero,* 640 F.2d 1014, 1015 (9th Cir.1981) (quoting *United States v. Rogers,* 469 F.2d 1317-18 (5th Cir.1972)) (citations and internal quotation marks omitted). Sine cannot demonstrate prejudice from the failure to rearraign him. The superseding indictment *narrowed,* rather than broadened, the allegation contained in the original indictment, so he had notice of and was arraigned on every allegation on which he was tried. So no relief is appropriate on this ground.

*United States v. Panthaky*, 232 Fed. Appx. 645, 650 (9th Cir. 2007). Section 2255 may not be invoked to relitigate issues already considered on direct appeal. *Egger v. United States*, 509 F.2d

745, 748 (9th Cir.) (*cert. denied*, 423 U.S. 842 (1975).). For the reasons stated by the Ninth Circuit, the district court was not without jurisdiction and petitioner is not entitled to relief on this claim.

B. Witness testimony

Movant contends that his conviction must be reversed because four material witnesses recanted their testimony and a fifth committed perjury. As set forth below, however, the allegations fail.

1. Recanted testimony

At trial, Benson Duruaku, Renata Lee, Robert Newnam, and Clarence Trausch testified that they would not have loaned money to Alpha Funding Group but for the representations movant made about assets allegedly held by Alpha Trust. Movant alleges these witnesses have recanted their testimony by claiming in civil litigation filed against a bank that they would not have loaned the money to Alpha Funding but for the signature guarantees made by a bank employee on various documents signed by movant. As support for his assertions, movant has submitted a complaint filed by the four as plaintiffs in a civil action and their related interrogatory responses. He points out that the complaint was recently dismissed with prejudice.

Respondent is correct that the apparent positions taken by the witnesses in their related civil litigation were not recantations. Saying that they would not have loaned money but for the signature guarantee is a far cry from saying that they loaned money *only* because of the signature guarantee, or that they did not also rely on movant's representations. Movant has not shown anything in the related civil litigation that is inconsistent with the testimony these witnesses gave at trial. Moreover, the fact that the civil lawsuit was dismissed with prejudice is no evidence of recantation.

2. Perjury

Likewise, movant has not shown that Michael Wansten gave perjured testimony. Wansten testified during the prosecution's case that he loaned $30,000 to Alpha Funding on

promise of a 100% return ($60,000) in 90 days. (Reporter's Trial Transcript ("RT") vol. 1 at 37-39.) Wansten further testified that was never repaid any of the money owed him by Alpha Funding. (*Id.*) Movant has placed evidence before the court that Wansten received a $25,000 from Alpha Funding in August of 1998. It also appears that a $5,000 wire transfer was made the following month to Wansten's ex-wife.

In response to this court's August 1, 2009 order, respondent has submitted a declaration signed by Wansten that, to the best of his recollection, the $25,000 check in question was money given to him by Panthaky for an expensive trip to Canada he and his wife took to meet with other potential investors. Wansten states that Panthaky encouraged them to fly first class and entertain the potential investors at several expensive restaurants. Wansten states that there was money leftover from the trip, which Panthaky directed him to keep. Wansten states that he has no knowledge or recollection of the additional $5,000 payment allegedly made to his ex-wife, stating that they were separated off and on during that period of time.

The evidence admitted at trial supports the information contained in Wansten's declaration. For example, government's exhibit ("GE") 2.9 is a letter from Wansten to movant dated January 29, 2000, more than a year after the alleged payments referenced by movant. In that letter, Wansten writes:

> The general dissatisfaction with Dr. Panthakys [sic] conduct over the last year as expressed to me by many of Alpha Funding Group's creditors has caused me great concern with regard t[o] repayment of my own note.

(GE 2.9.) Later, in a letter dated May 2, 2000 to movant, Wansten wrote:

> I am asking that you liquidate the collateral securing my loan and remit to me payment in full of $60,000 USD, being the total of my outstanding Note secured by our loan agreement of July 1, 1998.

(GE 2.22.) Included with this letter (GE 2.22) was a "chronology" in which Wansten summarized various communications he had with movant. In the chronology, Wansten made numerous entries concerning referrals of other potential investors to movant during the time

period of July- September, 1998. (GE 2.22.) The chronology is supportive of Wansten's assertion that the $25,000 was for a trip to meet with potential investors, and not for partial repayment of his note. The $25,000 check was dated August 19, 1998, within the time frame Wansten was apparently making referrals. Wansten was not even due to be repaid on his 90 day investment until late September or early October. (See Supplemental Excerpt of Record v.1 at 7 (Wansten testifying that he sent the money for the note "before July [1998] or in the early part of July [1998]".) Additionally, according to the chronology, Wansten continued to request repayment of the full amount owed long after he had received the alleged payments referenced by movant. (GE 2.9 & 2.22.)

Finally, it is telling that despite the fact that movant signed the $25,000 check and thus should have been aware that such payment was made, he testified at trial that Wansten was not repaid for his investment:

Q (government): Has Mr. Wansten been paid?

A (movant): Not to my knowledge.

(RT vol. 7 at 176.) Based on all the foregoing, there appears no need for an evidentiary hearing. The motion, file, and records of the case, considered in conjunction with Wansten's declaration, demonstrate that movant is not entitled to relief on this claim.

C. Movant's conduct as a valid basis for mail fraud

This is another claim that movant has already raised and lost on direct appeal. Citing *Miller v. Yokohama Tire Co*., 358 F.3d 616, 620-21 (9th Cir. 2004), he argues that his conduct, as shown by the prosecution, did not constitute fraud. Specifically, he asserts that the government only showed that he made his legal misrepresentations, as opposed to factual misrepresentations, and that legal misrepresentations are not a valid basis for a mail fraud conviction. The Ninth Circuit rejected the argument, writing:

> Sine maintains that the government's evidence proved only that he made a misrepresentation of law by representing that various documents held by the trust were sufficient to establish ownership

> of the Ginnie Mae securities. A mail fraud conviction usually cannot be premised on misrepresentation of law, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620-21 (9th Cir.2004), but that is not always true. Rather, there are "special situations that would justify reliance on such a misrepresentation of law," and that can therefore give rise to a mail fraud conviction. *Id.* at 621. As Sine's interactions with the victims of the fraud came in his capacity as a lawyer, this case involves at least one of those "special situations"- instances in which the party making the misrepresentation "purports to have special knowledge" of the law. *Id. ; see also* Restatement (Second) of Torts § 545 cmt. d (1977) ("The layman may justifiably rely on the lawyer's opinion even though he knows the lawyer is representing a client whose interest is adverse to his own."). The government's evidence indicated that Sine knew of the falsity of his representations regarding the securities' validity and that he was not merely giving bad, but dishonest, advice. *Cf.* Restatement (Second) of Torts § 545 cmt. d ("The layman may ... reasonably assume professional honesty.").
>
> Moreover, the government's evidence about the Ginnie Mae securities was not limited to misrepresentations about the legal effect of the documents. The government also presented evidence that Sine misrepresented facts about the trust's ownership of the securities. Such misrepresentation of facts can form the basis of fraud even when intertwined with a misrepresentation of law. *Miller*, 358 F.3d at 621.

*United States v. Panthaky*, 232 Fed.Appx. 645, 648, (9th Cir. 2007). Movant is not entitled to relief.

IV. CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255 be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 9, 2009

Charlene H. Sorrentino

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE